Wernick, J.
Plaintiff, Value Pharmacy, Inc., (“Value”) alleges that two former employees, Norman Mason (“Mason”) and Jackie Woiciechowski (“Woiciechowski”), together with a former employee/agent Stephen Penney (“Penney”), conspired together while employed by Value to establish a competing business, the codefendant Stat-Care Pharmacy, L.L.C. (“Stat”). Value alleges that, in breach of their fiduciary obligations to Value, Mason, Penney and Woiciechowski attempted to induce other employees of Value to join their venture, solicited Value’s customers, formed Stat and coordinated their terminations from Value so as to maximize the opportunity for Stat successfully to compete with Value. The Verified Complaint asserts claims for breach of fiduciary obligation, appropriation of trade secrets and other confidential or proprietary information, violations of Chapter 93A, §11 and intentional interference with beneficial contractual relations existing between Value and its customers. In addition to damages, Value seeks extensive injunctive relief. Before the Court is Value’s motion for preliminary injunction.
After hearing and consideration of the affidavits and memoranda submitted by the parties, the Court concludes that the preliminary injunction should be Denied.
Close scrutiny of the facts alleged on personal knowledge in the Verified Complaint and in the various affidavits, as well as those statements based on information and belief, and for which the factual basis for such belief is stated on personal knowledge in the Verified Complaint and in the various affidavits, discloses the following essentially uncontroverted facts:
1. None of the individual defendants executed non-competition agreements or confidentiality agreements with Value.
*516 2. All of the Individual defendants were employees at will of Value, or a related company.
3. Although Value has alleged misuse and misappropriation of trade secrets and confidential information, Value conceded at argument that it was not looking for relief with respect to trade secrets and confidential business information by means of this preliminary injunction.
4. There is no evidence of the terms and conditions of the business conducted between Value and its customers. There is no evidence, for example, of any contracts for any period of time, or for any given quantities, or that Value’s relationships with its customers were other than terminable at will.
5. There is no evidence that the defendants redirected potential new business from Value to Stat while employed by Value.
6. There is evidence that there were three, or possibly four, solicitations of Value customers by one or more of the defendants while the defendants were still employed by Value. These solicitations occurred in May and one may have occurred in late May or early June 1997.
7. There is also evidence that defendant Woiciechowski sent at least one letter dated June 5, 1997, the date of her termination from Value, to Coachlace Health Care.[1] There is no basis for determining whether this letter was sent before or after her termination from Value on June 5, from the record before the Court.
8. While there is an affidavit from one Value customer which has terminated its relationship with Value and transferred its business to Stat, that affidavit states that notice of such termination was given on July 7, 1997. There is nothing in the record before the Court to establish that this customer was one of the customers solicited before the termination of the defendants’ employment with Value.
9. Indeed, only one customer solicited before June 5, 1997 is identified by name and there is no evidence in the record that that customer has discontinued doing business with Value or is doing business with Stat. There is likewise no evidence that any other customer solicited by the defendants before June 5, 1997, has discontinued doing business with Value and transferred some or all of its business to Stat.
10. While the record does support Value’s contention that a number of its employees were approached by the defendants while the defendants were still employed at Value and were asked to consider leaving Value and to work for Stat, the record also discloses that only one of those employees, or possibly two, actually did so. The evidence on the record before the Court is insufficient to permit any finding that the defendants intended to strip Value of all of its key personnel, or that, even if that was their intention, they succeeded.
11.There is no substantial evidence in the record before the Court that any significant efforts to organize Stat were undertaken before April 1997.
Based on this record and primarily on the three to four solicitations conducted while the defendants were still employees of Value, none of which has been shown to have been successful and all of which were made within one month of the defendants’ termination from Value, the plaintiff seeks to enjoin the defendants for one full year from doing business with any of plaintiffs fifty-four customers.
“An at-will employee may properly plan to go into competition with his employer and may take after steps to do so while still employed. See Meehan v. Shaughnessy, 404 Mass. 419, 435 (1989); Chelsea Industries, Inc. v. Gaffney, 389 Mass. 1, 10 (1983). Such an employee has no general duty to disclose his plans to his employer, and generally he may secretly join other employees in the endeavor without violating any duty to his employer. Id. at 12 n. 20.” Augat, Inc. v. Agis, Inc., 409 Mass. 165, 172 (1991). An employee who plans to work for a competitor of his employer has no duty to volunteer that fact, either before or after he submits his resignation. Id at 176. It is no violation of his duty to an employer for an employee to solicit coemployees to work for a competing business the employee intends to establish. Id. at 172. An employee, however, may not solicit his employer’s customers while still working for his employer. Chelsea Industries, Inc. v. Gaffney, supra at 11-12; nor, at least if he is a top-ranking official or general manager of a company, may he attempt to procure the key management personnel of the business to defect with him, thereby entirely undermining the operations of the company. Augat, Inc. v. Agis, Inc., supra at 172-73.
Most of the activity of the defendants about which the plaintiff complains is not actionable. Merely getting ready to compete, soliciting co-employees terminable at will to join with you, developing business plans, making financing arrangements and being less than truthful about those plans with one’s employer is not a violation of an employee’s duly to his employer. While there is evidence of some activities which may have been in breach of the defendants’ fiduciary obligations to the corporation (primarily the soliciting of other customers), there is no evidence that such activity resulted in any loss of business by the plaintiff.
Rather than preventing the defendants from reaping the benefits of alleged improper conduct during the month before their departure from Value, the preliminary injunction requested by the plaintiff would provide plaintiff with a competitive advantage over Stat to which plaintiff is not entitled. From the moment of their termination by Value, the individual defendants were free to solicit Value’s customers on behalf of Stat. If the defendants had not solicited the three or four customers of Value which they may have solicited during the month before their termination from Value, *517 there would be no basis in the record for any finding that they committed any material breachs of their fiduciary obligations to Value and no basis for any injunction. The record fails to disclose that any of these solicitations was successful. The potential harm to the defendants from preliminarily enjoining them from soliciting all of Value’s customers is potentially enormous. The damage sustained by Value, if any, from defendants’ alleged breaches of fiduciary duty can be compensated by money damages. Counsel for the plaintiff has been unable to cite any authority from this Commonwealth supporting the issuance of such an injunction in the absence of a noncompetition agreement, or a secrecy agreement, or misappropriation of trade secrets. Indeed, on facts far more compelling than those of this case, the Supreme Judicial Court has declined to issue such an injunction. See Cain v. Cain, 3 Mass.App.Ct. 467, 478-79 (1975). There may be extraordinary circumstances that would justify such an injunction, but those circumstances are not present here. See e.g. C-E-I-R, Inc. v. Computer Dynamics, Corp., 183 A.2d 374 (1962); United Board & Carton Corp. v. Britting, 164 A.2d 824 (1959).
The Court concludes, therefore, that plaintiff has failed to demonstrate a likelihood of succeeding on the merits with respect to any of the injunctive relief prayed for and that the balance of harm clearly favors the defendants.
ORDER
For all of the above reasons, plaintiffs motion for issuance of preliminary injunction is Denied. Discovery is to be conducted in accordance with the stipulation regarding discovery filed by the parties. This case is assigned for trial on November 3, 1997.

 The letter itself is not addressed. However, it appears that a copy of the letter was faxed on June 9 to Value from Coachlace Health Care at 2:05 p.m.